J-A28010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: S.-A.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: T.T., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1549 EDA 2022 |

Appeal from the Decree Entered June 2, 2022
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2021-A0002

| IN RE: T.T., III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: T.T., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1550 EDA 2022 |

Appeal from the Decree Entered June 2, 2022
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2021-A0003

| IN RE: S.A.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| APPEAL OF: T.T., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1551 EDA 2022 |

Appeal from the Decree Entered June 2, 2022
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2021-A0005

BEFORE: PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED MARCH 28, 2023**

T.T., Jr. ("Father") appeals from the involuntary termination of his parental rights to his three youngest children, S.-A.T., S.A.T. and T.T., III ("Children"). On June 4, 2019, the Montgomery County Office of Children and Youth ("OCY") obtained physical and legal custody of the Children, who were living with Mother and Father at the time. After attempting reunification with the parents for almost two years, OCY filed Petitions for Termination of Parental Rights. Following a hearing, the trial court terminated Mother and Father's parental rights. Father appealed and this Court vacated the termination and remanded to the trial court for further proceedings. ***See In re Adoption of S.-A.T., T.T., III, S.A.T.***, 1191 EDA 2021, 1192 EDA 2021, 1193 EDA 2021 (Pa. Super. filed January 18, 2022) (unpublished memorandum).[1]

The prior panel concluded that the trial court had erroneously admitted hearsay statements. ***See id.***, at 11-12. The panel vacated the termination of Father's rights, and instructed the trial court to hold "a new termination hearing … in accordance with our Rules of Evidence and case law ….". ***See id.***, at 14. The panel of this Court did not reach Father's remaining issues. ***See id.***, at n.8.

---

[1] Mother also appealed the termination of her parental rights. ***See In re Adoption of S.A.T., T.T., III, S.A.T.***, 875 EDA 2021, 876 EDA 2021, 877 EDA 2021 (Pa. Super. filed November 16, 2021 (unpublished memorandum)). However, a panel of this Court affirmed the decrees.

The trial court held a hearing complying with our instructions on remand and issued an order terminating father's parental rights on June 2, 2022. At the hearing, counsel stipulated to incorporating much of the evidence from the previous termination hearing, but redacted certain parts in accordance with the instructions on remand. *See* N.T. 2/23/22 at 5-6. The court also heard testimony from Miriam Gilday, a nurse practitioner who treats the Children; Melinda Shelton, an adoption caseworker for CYS; Father's older daughter, who is not a subject of this appeal; and Father. The trial court terminated Father's parental rights to the Children pursuant to subsections (1), (2) and (8) of 23 Pa.C.S.A. §2511(a) and noted that it gave proper consideration required under 23 Pa.C.S.A. §2511(b).

On appeal Father claims that the trial court did not have clear and convincing evidence to terminate his parental rights under any of the subsections cited in the termination decrees. *See* Appellant's Brief at 8. Initially, we note that when reviewing an order terminating parental rights, we evaluate whether the trial court abused its discretion or committed an error of law while accepting findings of fact and credibility determinations that are supported by the record. *See In re Adoption of K.M.G.*, 219 A.3d 662, 670 (Pa. Super. 2019). We will not reverse a decision merely upon a finding that the record could produce a different outcome, but we will defer to the trial court's multiple first-hand observations of the parties. *See id.* Further, we will only find an abuse of discretion where we find manifest unreasonableness,

partiality, prejudice, bias or ill-will. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

The statutory grounds for termination must be proved by clear and convincing evidence. *See id*. "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re G.P.-R.*, 851 A.2d 967, 973 (Pa. Super. 2004) (citations omitted). Additionally, we note that while a trial court may find that the petitioner has met its burden of proving clear and convincing evidence for multiple subsections of 23 Pa.C.S.A. §2511(a), we only need to agree with that decision for any one of the subsections to affirm the termination decree. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004). When making a termination decision the trial court must engage in a bifurcated process, focusing first on the parent and evaluating their conduct under the statute and, if it is found that termination is appropriate, determining the needs of the child under the best interest of the child standard. *See In re Adoption of S.P.,* 32 A.3d 723, 736 (Pa. Super. 2011).

As we conclude OCY met its burden under subsection (a)(8), we will focus our analysis there. Under subsection (a)(8), the statute provides that termination is appropriate when a child has (1) been removed from the care of a parent for twelve months or more, (2) the conditions leading to the removal still exist and, (3) termination best serves the needs and welfare of

the child. **See** 23 Pa.C.S.A. § 2511(a)(8). "Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services." **In re Z.P.**, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations omitted).

Father does not dispute that the Children have been removed from his care for more than twelve months. **See** Appellant's Brief, at 18-20. Nor does he explicitly challenge the trial court's finding under subsection (a)(8) that termination best serves the needs and welfare of the Children.[2] **See id.** Instead, he argues that he has made changes personally and in the home since the Children were removed and those improvements were not adequately considered by OCY. **See id.**

Here, the primary cause of the Children being removed from Father's care was Father's neglect. The most urgent example of this neglect was Father's failure to protect the Children from Mother's drug abuse. On March 30, 2019, Father learned that Mother was driving while intoxicated with the Children in the car. N.T. 4/8/21, at 101. To his credit, Father contacted the police and had Mother stopped and arrested. **See id.**

---

[2] Even if Father had presented argument on this point, we would have concluded it merited no relief for the same reasons we would conclude there was sufficient evidence to justify termination under section 2511(b).

However, despite his knowledge of Mother's substance abuse issues, he continued to leave the Children in her exclusive care while he worked. *See id.*, at 102. On April 23, 2019, Mother was hospitalized for a drug overdose. *See id.*, at 101. Mother had taken the Children to Norristown for a truancy hearing when she collapsed. *See id.*, at 102. On May 6, 2019, OCY instituted a safety plan with Father to ensure that Children were not left alone with Mother or that she be allowed to drive them anywhere. *See id.*, at 103. Shortly thereafter, Mother was arrested for driving while intoxicated. *See* N.T., 4/7/21, at 45-46; 50. The Children were in the car. *See id.*, at 46-47. The Children were not properly secured in child safety seats. *See id.*, at 47.

Father had an excuse for this failure to comply with the safety plan: he claimed he was hospitalized with pneumonia. *See* N.T., 4/8/21, at 104. When asked what he did to ensure the Children's safety while he was hospitalized, he responded that he had told Mother to inform his OCY caseworker of his status. *See id.*

However, the trial court did not find Father's testimony credible. *See* Trial Court Opinion, 6/2/22, at 5-6. Further, the trial court noted that even if Father was hospitalized, his efforts to protect the Children from Mother's substance abuse were insufficient. *See id.* When OCY subsequently investigated the Children's maternal grandmother as a possible resource, they learned that Mother was still driving the Children on trips with maternal grandmother. *See* N.T., 4/8/21 at 14-15.

In addition to Father's failure to protect the Children from Mother, OCY also noted that there was no food in the family home. ***See*** N.T., 4/8/21, at 13. The home investigation also revealed a lack of running water. ***See id.*** After the Children were removed from Mother and Father's care, they were discovered to be suffering from significant dental health issues. ***See id.***, at 26-27. In particular, the oldest child had braces on her teeth for two years, but the orthodontist had not seen her since the braces were installed. ***See id.*** All three Children had cavities and required surgery to address their dental issues. ***See id.***, at 28.

The Children were placed in foster care on June 4, 2019. Father's goals for reunification were: "locate and engage in therapy as outlined in the parenting evaluation; … obtain a psychological evaluation and follow all recommendations; … lead a sober lifestyle; … obtain a place to live that would accommodate himself and his family." ***Id.***, at 21. Father complied with a psychological evaluation, where he was diagnosed with adjustment disorder and possible opioid abuse disorder. ***See*** N.T., 4/7/21, at 199. The psychologist recommended that Father participate in mental health counseling and parenting instruction. ***See id.***, at 200.

OCY presented evidence that Mother continued to abuse oxycodone up until the last screening before the termination hearing. ***See*** N.T., 4/8/22, at 34-36. Father has continued to live with Mother during this case. ***See id.***, at

40. Father has been prescribed oxycodone for his own pain management. ***See*** N.T., 4/7/21, at 43.

Father never presented OCY with records to indicate he had obtained mental health treatment or any other form of counseling about parenting the Children. ***See id.***, at 201; ***see also*** N.T., 4/8/21 at 42. Father continues to align himself with Mother. ***See*** N.T., 4/8/21, at 50. As a result, he minimizes his failure to protect the Children from Mother's drug abuse. ***See id.***, at 51. Father failed to fully participate in his psychological assessment, which was consistent with his failure to accept responsibility for the Children's safety. ***See*** N.T., 4/7/21, at 203. As a result, the psychologist opined that Father had failed to adequately address the concerns that led to the Children's placement. ***See id.***

This record was sufficient to support the trial court's conclusion that the conditions that led to the Children's removal from Father's care were not remedied. Father continued to live with Mother but consistently denied or minimized his responsibility to protect the Children from Mother's drug abuse. Meanwhile, Mother continued to abuse oxycodone. And while there was no evidence Mother had obtained oxycodone from Father, it is notable that his prescription for oxycodone creates a reasonably foreseeable possibility that Mother could surreptitiously satisfy her habit through Father's supply. Since Father has demonstrated behaviors indicating he is not responsible for protecting the Children from Mother, the trial court was entitled to be

concerned by these circumstances. When viewed as a whole, the record is sufficient to support a finding that Father would continue to fail to protect the Children from Mother's drug abuse. Accordingly, the record supports the trial court's conclusion that the conditions that led to the Children's removal from Father's care continue to exist. Father's argument that the trial court erred merits no relief.

We note that Father's appellate brief lists a challenge to the trial court's conclusion that there was sufficient evidence to terminate his parental rights pursuant to 23 Pa. C.S.A. § 2511(b). **See** Appellant's Brief, at 8. However, Father fails to present any argument in support of this issue. **See** Appellant's Brief, at 11-22. He has therefore waived this challenge.

Even if he had preserved this challenge, we would conclude it merits no relief. Section 2511(b) requires the court, before terminating parental rights, to consider the emotional and physical needs and welfare of the child that cannot be measured by environmental factors that may be out of the parent's control such as housing, income, and medical care. **See In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). In determining a child's needs and welfare, the orphans' court is required to consider "whatever bonds may exist between the [Children] and [Father], as well as the emotional effect that termination will have upon the [Children]."

*In re Adoption of A.C.H.*, 803 A.2d 224, 229 (Pa. Super. 2002) (citation omitted). At the same time, the court should also consider the intangibles, such as the "love, comfort, security, and stability," the child might have with the foster parents. *In re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008) (citation omitted).

Father and mother failed to take the opportunity to work on their relationship with their Children during supervised visitation. *See* N.T. 4/8/21 at 46. The Children's adoption caseworker has observed them interacting with their foster parents in a loving way, seeking approval and guidance from them. *See* N.T. 2/23/22 at 30. The caseworker opined that the Children's needs are being met in the pre-adoptive home. *See id*. at 30-31. The Children do not ask about birth father or interact with him. *See id*. at 32. In addition, the psychologist opined that the Children had "weak and insecure [bonds with their parents that included] some unhealthy elements." *See* N.T., 4/7/21, at 190.

The trial court found:

It is abundantly clear to the court in this case that termination of parental rights is in the best interest of all three children. The children's basic nutritional, emotional, medical, education, or developmental needs were severely neglected while they were in the care of Birth Father. Since being placed with foster parents, the children have made remarkably significant improvements in their health, development, education and behavior.

Trial Court Opinion at 19.

Based on this record, we cannot conclude the trial court's reasoning was an abuse of discretion. Even if Father had properly presented argument to challenge the trial court's determination under section 2511(b), it would merit no relief. As we conclude that OCY presented sufficient evidence to justify termination of Father's parental rights pursuant to 23 Pa. C.S.A. §2511(a)(8) and (b), we affirm the decrees terminating his parental rights.

Decrees affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023